BMW AUTO CENTER, INC., Appellant,

v.

RIVER OAKS BANK, Alan D. Hoover, and Regina E. Hoover, Appellees.

No. B14–88–00731–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 17, 1989.

Rehearing Denied Sept. 21, 1989.

Daniel K. Hedges, Houston, for appellant.

Dermot Rigg, James T. Lombardino, Roxane D. Lapointe, and Matthew A. Kornhauser, Houston, for appellees.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

SEARS, Justice.

BMW Auto Center ("BMW") appeals from a post-answer default judgment. The trial court rendered a post-answer default judgment for River Oaks Bank, Alan D. Hoover, and Regina E. Hoover when BMW failed to appear for trial. BMW raises five points of error; however, we will deal only with the contention the trial court erred in denying its motion for new trial because it met all criteria necessary to require the setting aside of a post-answer default judgment. We reverse and remand the case for a new trial.

This case involves a claim by River Oaks Bank ("the bank") against BMW and the Hoovers for fraud, conspiracy and debt collection arising from an automobile loan made to Alan Hoover. Using a worksheet prepared by BMW's salesman, Don Lasko, Hoover borrowed money from the bank in excess of the purchase price of the car. BMW drafted the full loan amount from the bank and paid the excess to Hoover. After Hoover defaulted on the note, the bank foreclosed its lien on the car. The bank then sued the Hoovers for the deficiency remaining on the note and filed suit against BMW seeking actual and punitive damages based on fraud and conspiracy. The bank alleged that BMW and Hoover knowingly prepared the worksheet as a false invoice and inflated the price of the automobile to be purchased, that BMW prepared the false invoice knowing the bank would rely on the invoice to lend money to Hoover; and, that the invoice induced the bank to lend money to Hoover in excess of its lending policies. BMW answered asserting the worksheet was not an invoice and was not intended to be an instrument relied on by the bank to loan money to Hoover.

The case was set for trial in the 190th District Court of Harris County, the Honorable Wyatt Heard presiding, for the two week period beginning April 25, 1988. When Joe Sneed, the attorney for BMW, received a copy of the notice of trial setting, he observed that his address on the notice was the address of Sneed's former law firm. Although he had previously notified the district clerk's office of his new address, Sneed called the court clerk and sent a letter to the district clerk informing them of his correct address.

On Monday, April 25, 1988, the day the case was set for trial, Sneed told the judge that he had been unable to take the depositions of the bank's expert witnesses because the bank had not yet produced certain documents as ordered by the court. Sneed informed the court he would need a continuance to complete discovery. Judge Heard told Sneed the case would not be reached during the two week period and that a continuance was unnecessary.

On Wednesday, April 27, 1988, Pat Joseph, court coordinator for the 190th, 270th, and 280th district courts, telephoned Sneed's former law firm and informed the

receptionist that the case was set for trial at 9:00 a.m. the following day before a visiting judge, the Honorable Charles Sherrill. No one at Sneed's former firm notified Sneed or his office of the trial setting. Also on Wednesday evening, Roxanne Lapointe, attorney for the bank, telephoned R. Gary Stephens, Sneed's employer, and informed him that the case had been set for trial the following morning. Stephens attempted to contact Sneed but was unable to reach him.

On Thursday, April 28, 1988, the day of trial, Stephens arrived at his office around 9:00 a.m. and asked Sneed's secretary, Laura Morgan, about Sneed's whereabouts. She informed Stephens that Sneed had been in the office earlier to meet a client and was en route to Beaumont with the client for a meeting with the Industrial Accident Board. Stephens instructed Morgan to call the 190th District Court and check on the status of the case. Morgan telephoned the court and spoke with Pat Joseph who informed Morgan that trial had commenced and judgment was being taken against BMW. Morgan told Joseph that Sneed was in Beaumont, was unaware of the trial and that she would contact him as soon as possible. Morgan telephoned the Industrial Accident Board in Beaumont and left word for Sneed to contact her as soon as he arrived. Sneed returned Morgan's telephone call and immediately telephoned the 190th court. Sneed told the clerk he had no notice of the trial setting and asked to speak to Judge Heard. The clerk returned to the telephone and told Sneed she had talked to the judge and the judge had said the case had not been reached and would not be reached. Sneed then called Morgan and asked her to re-confirm that the case had not been reached. Morgan called the 190th court and was also told the case would not be reached for trial. It was discovered later that Judge Heard had not been advised that the case was being tried by a visiting judge.

Because Sneed failed to appear for trial, a post-answer default judgment was taken against BMW that same day. Sneed did not learn of the judgment until May 5, 1988. BMW timely filed a motion for new trial, which alleged the failure of notice and conflict of information. Judge Sherrill had left word with the court personnel to notify him of any motion for new trial. Therefore, he heard and denied the motion and Judge Heard again was not informed.

▇▇▇ In its first point of error, BMW asserts the trial court abused its discretion in denying the new trial. A motion for new trial is addressed to the trial court's discretion and the court's ruling on such will not be disturbed on appeal in the absence of a showing of an abuse of that discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex.1984). While trial courts have some measure of discretion in the matter, it is not an unbridled discretion to decide cases as they might deem proper without reference to any guiding rule or principle. *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939). A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to appear before judgment was not intentional or the result of conscious indifference, but was due to a mistake or accident, and, the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff. *Id.*, 133 S.W.2d at 126.

▇▇▇ In determining whether there was intentional disregard or conscious indifference, we must look to the acts of BMW's attorney. The above evidence does not show that Sneed's failure to appear at trial was a result of an intentional act or conscious indifference. Therefore, the first criterion of *Craddock* was met. *Craddock* further requires the defaulting party to set up a meritorious defense. The motion for new trial must allege facts which would constitute a defense to the cause of action asserted by the plaintiff, and must be supported by affidavits or other evidence proving prima facie that the defendant has a meritorious defense.

Don Lasko, the salesman who prepared the worksheet, stated in his affidavit that BMW did not present the invoice to the

bank or make representations that the figure on the preliminary worksheet was the final sales price of the automobile purchased by Hoover. BMW did not know that Hoover intended to use the worksheet to defraud the bank, nor did BMW know the bank had not agreed to lend more than ninety percent of the actual purchase price. Reagan Helm, the president of BMW, stated in his affidavit that the worksheet prepared by Lasko is the starting point of negotiations to determine the final sales price of a particular vehicle. The initial worksheet rarely reflects the final sales price of the automobile. Also, the final invoice and the tax affidavit were sent to the bank by BMW *prior* to drafting the funds. Therefore, the bank had actual knowledge of the final sales price *prior* to funding. These facts were sufficient to set up a meritorious defense as required by *Craddock.*

The third requirement of *Craddock* is that the motion for new trial be filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff. This element consists of two sub-parts: (1) whether the defendant is willing and able to go to trial immediately, and (2) whether the defendant is willing to reimburse the plaintiff for all his reasonable costs incurred in obtaining the default judgment. *Aero Mayflower Transit Co. v. Spoljaric,* 669 S.W.2d 158, 162 (Tex.App.—Fort Worth 1984, writ. dism'd). Once the defendant has alleged that the granting of a new trial will not delay or otherwise injure the plaintiff, the burden of going forward with proof of injury shifts to the plaintiff because those matters are peculiarly within the plaintiff's knowledge. *Cliff v. Huggins,* 724 S.W.2d 778, 779 (Tex. 1987).

In its motion for new trial, BMW states it is willing to proceed to trial when the case is properly set. Further, BMW offers to pay reasonable costs and expenses incurred by the parties in obtaining the default judgment. In response to BMW's motion, the bank alleged that the granting of the motion for new trial would injure the bank because its key fact witness is no longer available for purposes of testifying as he is now affiliated with a competitor bank. However, the response and supporting affidavits fail to allege the witness lives outside the court's subpoena jurisdiction, that his deposition cannot be taken, or that his testimony from the first trial would not be available. The witness's change in employment does not necessarily make him unavailable for trial. Further, even if the key fact witness were unavailable for a subsequent trial, plaintiff would not suffer injury as there are other means of obtaining a witness's testimony. We find BMW's motion for new trial supports the third requirement of *Craddock.*

We find that BMW was denied a trial through no fault or neglect of its own. It acted in a reasonable and prudent manner in attempting to discover the trial status of this cause. Further, it satisfied all three requirements for the setting aside of a default judgment. We find the trial court abused its discretion in denying the motion for new trial. BMW's first point of error is sustained. Our disposition of point of error number one pretermits discussion of BMW's remaining points of error.

The trial court's judgment is reversed and the cause remanded for a new trial.